Hearing Date:  October 15, 2015
Hearing Time:  10:00 a.m.

**COLE SCHOTZ P.C.**
900 Third Avenue, 16th Floor
New York, NY  10022
Telephone (212) 752-8000
Facsimile (212) 752-8393
Leo V. Leyva, Esq.
Ilana Volkov, Esq.
*Attorneys for 100 Mile Fund, LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

In re:                                                                    Chapter 11

    Biomobo, Inc.,                                        Case No. 14-23719(RDD)

                   Debtor.       X
---------------------------------------------------------------------------

In re:                                                                    Chapter 11

    Shippy Realty Corp.,                                  Case No. 14-23756(RDD)
    Dari Realty Corp.,                                    Case No. 14-23757(RDD)
    Dashley Corporation,                                  Case No. 14-23758(RDD)
    144 Cortlandt Street LLC,                             Case No. 14-23759(RDD)

                   Debtors.      X    (Jointly Administered
---------------------------------------------------------------------------

In re:                                                                    Chapter 11
    146-148 Cortlandt Street LLC,                         Case No. 15-22291(RDD)

                   Debtor.       X
---------------------------------------------------------------------------

In re:                                                                    Chapter 11
    173 Cortlandt Street LLC,                             Case No. 15-22363(RDD)

                   Debtor.       X
---------------------------------------------------------------------------

**OBJECTION OF 100 MILE FUND, LLC TO DEBTORS' "REQUEST" FOR A
DECLARATORY JUDGMENT THAT DEBTORS' INABILITY TO OBTAIN AN
EAGLE 9 POLICY FOR ALL DEBTORS AS REQUIRED BY DIP FINANCING
<u>AGREEMENT IS NOT A MATERIAL DEFAULT OF THE LOAN</u>**

**TO:  THE HONORABLE ROBERT D. DRAIN, United States Bankruptcy Judge**

47702/0046-12354149v1

100 Mile Fund, LLC, debtor-in-possession lender (the "DIP Lender"), by and through its undersigned counsel, objects to the "request" of Biomobo, Inc., Shippy Realty Corp., Dari Realty Corp., Dashley Corporation, 144 Cortlandt Street, LLC, 146-148 Cortlandt Street LLC, and 173 Cortland Street, LLC (collectively, the "Debtors") for a declaratory judgment that Debtors' inability to obtain an Eagle 9 policy for all Debtors as required by the DIP Documents (as defined below) is not a material default of the DIP Loan (as defined below) (the "Request"), and respectfully states as follows:

## INTRODUCTION

1.  Besides being procedurally defective, the Request is based on unverified and inaccurate statements of counsel and represents an improper attempt to rewrite the debtor-in-possession loan (the "DIP Loan") the DIP Lender provided and this Court approved. For the reasons set forth herein, the Request should be denied summarily and the Debtors' cases dismissed.

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

2.  On June 12, 2015, the Debtors filed a motion, among other things, to approve the DIP Loan [Docket No. 31] (the "DIP Financing Motion"). Attached as Exhibit A to the DIP Financing Motion was a term sheet for the DIP Loan which set forth substantially all the terms of the financing the DIP Lender was willing to provide to the Debtors (the "DIP Financing Term Sheet").

3.  In the section captioned "Collateral," the DIP Financing Term Sheet provided that the DIP Loan would be secured by, among other things, "an exclusive first priority perfected pledge of all ownership interests in the Borrower (the "Pledge")…" Further in that section, the DIP Financing Term Sheet stated "**[t]he liens created by the … Pledge and the priority**

2

**thereof shall be insured in favor of Lender and its successors and/or assigns, which insurance shall be issued and underwritten by a title insurance carrier acceptable to Lender in its sole discretion**" (emphasis supplied).[1]

4.     On July 10, 2015, this Court entered an order granting the DIP Financing Motion on an interim basis [Docket No. 38].  The final order granting the DIP Financing Motion was entered on July 28, 2015 [Docket No. 46] (the "Final DIP Financing Order").  Paragraph 11 of the Final DIP Financing Order required the Debtors to file a motion to dismiss the cases within 14 days.  That paragraph further stated that if an order granting such motion to dismiss were not entered within 90 days, the Debtors would be in default of the DIP Documents (as defined in the Final DIP Financing Order).

5.     The closing on the DIP Loan occurred on August 7, 2015.  On that date, the parties entered into a Post Closing Agreement, attached hereto as **Exhibit A**.  Pursuant to the Post Closing Agreement, the Debtors expressly agreed, among other things, to deliver to the DIP Lender the UCC Policies (as defined in the Post Closing Agreement) within thirty (30) days.

## LEGAL ARGUMENT AND BASIS THEREFOR

6.     The Request is an inappropriate attempt to rewrite the terms and conditions of the DIP Loan and the DIP Documents.  For the reasons set forth herein, the Request is patently without merit and should be denied.

7.     As an initial matter, the Request does not comply with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Bankruptcy Rules clearly provide that a proceeding to obtain an injunction or equitable relief, or a declaratory judgment relating to an injunction or equitable relief, is an adversary proceeding.  Fed. R. Bankr. P. 7001.  Thus, the

---

[1] The Debtors incredibly state in the Request they were not aware of the title insurance requirement.  See Request, ¶ 11.

Debtors' "Request," which was not filed as an adversary proceeding or even as a motion (which in any event also would be improper), must be denied as procedurally flawed.

8.  Equally important, the Request is substantively deficient. First, the Debtors misleadingly argue the DIP Lender waived its requirement to obtain an Eagle 9 UCC Policy by closing the Loan without it. As the Post Closing Agreement unequivocally demonstrates, however, no such waiver occurred. In fact, the Debtors expressly committed to delivering such policy within 30 days of the closing. The Post Closing Agreement was an accommodation to the Debtors -- had the DIP Lender not agreed to the post-closing delivery of the Eagle 9 UCC Policy, the DIP Loan would not have closed timely and the Debtors' cases would have been converted or dismissed by virtue of self-executing orders previously entered by this Court.

9.  Second, the Debtors speciously contend that the DIP Lender's counsel "refused to provide" Debtors' counsel with an Eagle 9 UCC Policy which was issued for some of the Pledges. This statement cannot be further from the truth. Without belaboring the record with the numerous email exchanges and telephone conversations between counsel, by way of example, attached hereto **as Exhibit B** is an email from Bradley Gibson of First American dated August 17, 2015 advising Debtors' counsel of which Pledges First American was unable to insure. Thus, at all times, Debtors' counsel knew the precise status of the Eagle 9 UCC Policy for each of the borrowers.

10. Third, the Debtors assert "they have done everything [they] can do to try and obtain the Eagle 9 UCC Policy for all Debtors." See Request, ¶ 7. The Debtors concede, however, that although both First American and Chicago Title provide Eagle 9 policies, the Debtors have made no efforts to request title insurance for the Pledges from Chicago Title. Debtors' counsel previously represented he has a good relationship with the co-insurer of title on

4

the subject real estate; such co-insurer deals directly with Chicago Title. The Debtors' refusal and/or failure to contact Chicago Title in view of this relationship (and otherwise) defies logic and is in bad faith.

11.     Fourth, the Debtors attempt to portray the DIP Lender and its counsel as overreaching and "bad guys." Such characterizations completely miss the mark, as the DIP Lender and its counsel are not deviating from or demanding anything more than what the DIP Financing Term Sheet and DIP Documents, to which the Debtors agreed, dictate.

12.     Lastly, the Debtors desperately attempt to argue that because the DIP Lender is purportedly oversecured, there is reason to conclude there is no default under the DIP Loan. The Debtors advance no facts or law, however, in support of such conclusion – as none exists. Simply stated, this too is not a credible argument for finding the Debtors are not in default under the DIP Documents.

13.     In short, having knowingly and expressly agreed to the terms and conditions of the DIP Loan, which enabled them to avoid conversion and/or dismissal of their cases, the Debtors now spuriously beseech the Court for equitable relief not warranted under the circumstances, either procedurally or substantively. As discussed above, none of the arguments presented by the Debtors has merit and, therefore, the Request should be denied. Additionally, the Court should grant the Motion to Dismiss without further delay or adjournment.[2]

---

[2] The Court should be aware that the DIP Lender was never consulted about the Debtors' previous adjournment of the Motion to Dismiss. Debtors' counsel admitted he contacted the Court for an adjournment without advance notice to or consent from the DIP Lender's counsel so that the cases would stay within the jurisdiction of this Court and counsel could then ask the Court to waive the Debtors' default under the DIP Documents in the event the title policy issues could not be satisfactorily addressed.

47702/0046-12354149v1

## **CONCLUSION**

14. For the reasons set forth herein, the Request should be denied and the cases dismissed.

Dated: New York, New York  
       October 9, 2015

Respectfully submitted,

COLE SCHOTZ P.C.

/s/ *Ilana Volkov*  
Leo V. Leyva, Esq.  
Ilana Volkov, Esq.  
900 Third Avenue, 16th Floor  
New York, New York 10022  
(212) 752-8000 (Phone)  
(212) 752-8393 (Fax)

*Attorneys for 100 Mile Fund, LLC*

47702/0046-12354149v1

# EXHIBIT A

POST CLOSING AGREEMENT

August 7, 2015

100 Mile Fund, LLC
570 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Attention: William Procida

Re:   Loan from **100 MILE FUND, LLC**, (together with its successors and assigns, collectively, "**Lender**") to by **BIOMBO, INC.**, a New York corporation, **173 CORTLANDT STREET LLC**, a New York limited liability company, **144 CORTLANDT ST. LLC**, a New York limited liability company, **146-148 CORTLANDT STREET, LLC**, a New York limited liability company, **SHIPPY REALTY CORPORATION**, a New York corporation, **DARI REALTY CORP.**, a New York corporation, and **DASHLEY CORP.**, a New York Corporation, each having an address at 150 Cortlandt Street, Sleepy Hollow, New York 10591 (together with their permitted successors and assigns, individually, collectively, jointly and severally, "**Borrower**") in the amount of Nine Million Five Hundred Thousand and No/100 ($9,500,000.00) Dollars (the "**Loan**")

Ladies and Gentlemen:

As a material inducement for the Lender to close the Loan on the date hereof, Lender has required that this Post Closing Agreement (this "**Agreement**") be executed and delivered to Lender. All capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the Loan Agreement dated as of the date hereof between Borrower and Lender (collectively the "**Loan Agreement**"). In regard to the Loan, the undersigned does hereby certify to and agree with Lender as follows:

1.    Specific Post Closing Matters. The undersigned acknowledges that the Loan Documents are being executed at this time and the Loan closed and funds disbursed in connection therewith without all of the Loan requirements being met and that the execution of the Loan Documents shall not constitute any admission by Lender that all the Loan requirements have been met. In consideration of Lender closing the Loan on the date hereof prior to the satisfaction of Lender's requirements with respect thereto, Borrower hereby agrees to perform the obligations and deliver to Lender the documents, instruments, materials and information set foth on Schedule A attached hereto on or before the date for delivery of same in accordance with Schedule A.

2.    Additional Non-Recourse Carveout. Borrower hereby acknowledges that until delivery of the items referenced in Paragraph 1, Borrower and Guarantor guarantee any additional "loss, costs and damages" of Lender arising out of the failure to deliver such items and that the delivery of such items constitute "Obligations" under the Loan Agreement.

3.    Default under this Agreement. The failure of Borrower to comply with the provisions of this Agreement at any time shall be and constitute an Event of Default under the Loan.

4.    Survival of Agreement. This Agreement shall survive the closing of the Loan.

5. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts by some or all of the parties hereto, and each such counterpart shall be considered an original, and all of which together shall constitute a single Agreement.

**[NO FURTHER TEXT ON THIS PAGE]**

2

IN WITNESS WHEREOF, the parties below have caused this Post Closing Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**BORROWER:**

**BIOMBO, INC.,**
a New York corporation

By: _____
Name:
Title:

**144 CORTLANDT ST. LLC,**
a New York limited liability company

By: _____
Name:
Title:

**DASHLEY CORP.,**
a New York corporation

By: _____
Name:
Title:

**173 CORTLANDT STREET LLC,**
a New York limited liability company

By: _____
Name:
Title:

**SHIPPY REALTY CORPORATION,**
a New York corporation

By: _____
Name:
Title:

**DARI REALTY CORP.,**
a New York corporation

By: _____
Name:
Title:

**146-148 CORTLANDT STREET, LLC,**
a New York limited liability company

By: _____
Name:
Title:

**GUARANTOR:**

_____
**CIRILO RODRIGUEZ**, an individual

Schedule A

(a)  Within seven (7) business days of the date hereof, Borrower shall set up a Lockbox (as defined in the Lockbox Agreement) with ConnectOne Bank (the "**Bank**") and shall execute and deliver all paperwork required by Lender and the Bank, as applicable, with respect to establishing such Lockbox.

(b)  Within thirty (30) days of the date hereof, Borrower shall deliver to Lender tenant estoppel certificates from the following commercial tenants:

   (i)    GEM Barber Shop (85-87 Cortlandt Street)
   (ii)   Gladys Market(85-87 Cortlandt Street)
   (iii)  Delgado Grocery (196 Cortlandt Street)
   (iv)   L&W Multiservice (76 Beekman Avenue)

(c)  Borrower shall obtain and deliver to Lender within thirty (30) days after the date hereof, UCC Insurance Policies (collectively, the "**UCC Policies**") from First American Title Insurance Company ("**FATIC**") covering the "Pledged Interests" as defined under those certain Pledge Agreements dated the date hereof in favor of Lender, which UCC Policies shall be in form and substance reasonably satisfactory to Lender.  In connection therewith, Borrower shall execute and/or deliver to Lender and FATIC such documents and instruments, including without limitation an indemnification agreement, and perform such actions as requested by FATIC, including without limitation providing documentation to the extent reasonably possible regarding the stauts of any and all prior certificates, in order to issue the UCC Policies.  Borrower shall be responsible for all reasonable legal fees and title insurance premiums incurred by Lender in connection with the UCC Policies.

# EXHIBIT B

| | |
|---|---|
| **From:** | Gibson, Bradley <brgibson@firstam.com> |
| **Sent:** | Monday, August 17, 2015 1:23 PM |
| **To:** | Zaslavsky, Bella; Altergold@aol.com; Schoen, James |
| **Cc:** | Nalavala, Rab N.; Reeves, Lenore Y.; Leyva, Leo; probinson@excaliburtitlevest.com; jmullane@procida.com; kfunsch@procida.com |
| **Subject:** | RE: Cirilo Rodrguez (Indemnity Agreement) [COLESCHOTZ-CSDOCS.FID1769447] |

Bruce,

Thanks for your response.  We appreciate your representations regarding the certificates for Biombo Inc. and Dashley Corp.  We are still trying to address the following certificates:

1. Shippy Realty, Corp. - Certificate number 5 (Certificate number 6 was delivered to Cole Schotz.)
2. Dari Realty Corp. – Certificates 1, 2, 8 and 9 are still not accounted for.
3. 144 Cortland St. LLC – Certificate no. 1.

Unfortunately, it does not appear that you will be able to account for these ce2rtificates and your client's financial statements did not reflect his ability to stand behind an indemnity for an $9.5 million.  Is there another indemnitor available?

Thanks.

brad

---

**Bradley N. Gibson**
Associate General Counsel - UCC Division
First American Title Insurance Company
UCC Division



5 First American Way, Santa Ana, CA 92707
Direct: (714) 250-8647
Fax: (714) 481-4661
Tollfree: (800) 700-1191
Email: brgibson@firstam.com
Web: www.EAGLE9.com

A member of the First American Financial Corporation
family of companies  | NYSE: FAF

---

**From:** Zaslavsky, Bella [mailto:BZaslavsky@coleschotz.com]
**Sent:** Thursday, August 13, 2015 7:25 AM
**To:** Altergold@aol.com; Gibson, Bradley; Schoen, James
**Cc:** Nalavala, Rab N.; Reeves, Lenore Y.; Leyva, Leo; probinson@excaliburtitlevest.com; jmullane@procida.com; kfunsch@procida.com
**Subject:** RE: Cirilo Rodrguez (Indemnity Agreement) [COLESCHOTZ-CSDOCS.FID1769447]

Bruce,

Regarding item 1 below, we received certificate number 6 for Shippy Realty. Please see attached.

Thanks,
Bella

# Cole Schotz P.C.

**Bella Zaslavsky**
**Associate**
900 Third Avenue | 16th Floor | New York, NY | 10022-4728
Direct 646.563.8958 | Firm 212.752.8000 | Fax 646.563.7958 | bzaslavsky@coleschotz.com
New Jersey    |    New York    |    Delaware    |    Maryland    |    Texas
vCard    |    website

Legal Secretary: Basira Miah | 212.752.8000 x3000 | bmiah@coleschotz.com

---

**From:** Altergold@aol.com [mailto:Altergold@aol.com]
**Sent:** Thursday, August 13, 2015 10:02 AM
**To:** brgibson@firstam.com; JSchoen@firstam.com
**Cc:** Nalavala, Rab N.; Zaslavsky, Bella; Reeves, Lenore Y.; Leyva, Leo; probinson@excaliburtitlevest.com; jmullane@procida.com; kfunsch@procida.com
**Subject:** Re: Cirilo Rodrguez (Indemnity Agreement)

1. Shippy Certificate number 5 was issued to Cirilo Rodriguez for 200 shares of stock.  The original was delivered to Cole Schotz, Lender's lawyer.

2. We sent you Certificates 3 and 4 for Dari Realty Corp.  They have both been canceled. Certificates 1 and 2 were issued to Sal and Helen Shapiro in 1949, are marked void in the Certificate register, and were probably canceled and destroyed when numbers 3 and 4 were issued to the Shapiro family in 1992.

3.  Certificate number 1 for 144 Cortlandt St. was never utilized and appears to have been destroyed prior to my involvement.

4.  173 Cortlandt Street LLC and 146-148 Cortlandt Street have never issued any certificates other than certificates number 1 to Cirilo Rodriguez.

Bruce R. Alter, Esq.
Alter & Brescia, LLP
550 Mamaroneck Avenue, Suite 401
Harrison, New York 10528
(914) 670-0030

In a message dated 8/12/2015 4:14:46 P.M. Eastern Daylight Time, brgibson@firstam.com writes:

> Thank you very much.  Your email and attachment goes a long way for our underwriting.  A few additional questions:
>
> 1. I noticed that Shippy Realty Corporation was missing Certificate number 5.  Do you know its whereabouts or to whom it was issued?
>
> 2. Do you have any information for certificates number 1 through 4 for Dari Realty Corp.?

2

3. Did you destroy the certificate number 1 for 144 Cortland St LLC?

4. For the certificates from 173 Cortlandt Street LLC and 146-148 Cortlandt Street LLC, can you please confirm that there were no other prior certificates as well?

Thank you.

Brad

**Bradley N. Gibson**
Associate General Counsel - UCC Division
First American Title Insurance Company
UCC Division

First American

5 First American Way, Santa Ana, CA 92707
Direct: (714) 250-8647
Fax: (714) 481-4661
Tollfree: (800) 700-1191
Email: brgibson@firstam.com
Web: www.EAGLE9.com

A member of the First American Financial Corporation
family of companies  | NYSE: FAF

---

**From:** Altergold@aol.com [mailto:Altergold@aol.com]
**Sent:** Tuesday, August 11, 2015 1:06 PM
**To:** Gibson, Bradley; Schoen, James
**Cc:** rnalavala@coleschotz.com; bzaslavsky@coleschotz.com; lreeves@coleschotz.com; lleyva@coleschotz.com; probinson@excaliburtitlevest.com; jmullane@procida.com; kfunsch@procida.com
**Subject:** Cirilo Rodrguez (Indemnity Agreement)

All,

I assume that you asking for the canceled or missing stock certificates. Here is what I have:

1. canceled certificate for Shippy Realty Corp.

3

2. canceled certificate for Dari Corp.

3. There are no canceled certificates for Biombo Inc. I personally issued stock certificate #2 to Cirilo Rodriguez. Certificate #1 was never issued. I physically destroyed #1 because I had made a clerical error in the issuance process.

4. There are no canceled certificates for Dashley Corp. I personally issued stock certificate #2 to Cirilo Rodriguez. Certificate #1 was never issued. I physically destroyed #1 because I had made a clerical error in the issuance process.

Please contact me with any further questions.

Bruce R. Alter, Esq.
Alter & Brescia, LLP
550 Mamaroneck Avenue, Suite 401
Harrison, New York 10528
(914) 670-0030

********************************************************************************
This message may contain confidential or proprietary information intended only for the use of the
addressee(s) named above or may contain information that is legally privileged. If you are
not the intended addressee, or the person responsible for delivering it to the intended addressee,
you are hereby notified that reading, disseminating, distributing or copying this message is strictly
prohibited. If you have received this message by mistake, please immediately notify us by
replying to the message and delete the original message and any copies immediately thereafter.

If you received this email as a commercial message and would like to opt out of future commercial
messages, please let us know and we will remove you from our distribution list.

Thank you.~
********************************************************************************
FAFLD


* * * * * *

This e-mail message from Cole Schotz P.C. is private and may contain privileged information. If you are not the intended recipient, please do not read, copy or use it or disclose it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system.